SALVATORE VOLPE, PLAINTIFF-APPELLEE, v. WILLIAM PERRUZZI, DEFENDANT-APPELLANT.

Argued October 4, 1938—Decided February 3, 1939.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and HEHER.

For the plaintiff-appellee, *Louis Dworetz (Charles C. Stalter,* of counsel).

For the defendant-appellant, *Kellogg & Chance (R. Robinson Chance,* of counsel).

BROGAN, CHIEF JUSTICE. The defendant appeals from a judgment recovered by the plaintiff in the Passaic County Circuit Court. The judgment represents the plaintiff's damage for injuries suffered by him on being struck by the defendant's automobile, which the defendant was driving at the time, when the plaintiff, with other pedestrians, was attempting to cross Broadway, at Main street, in the city of Paterson. The plaintiff is totally blind as a result of the injuries.

Three grounds are urged, which the appellant says amount to legal error, calling for a reversal of the judgment.

*First*—It is argued that the trial court erred in refusing to strike out the opinion evidence of one of the plaintiff's doctors, on the ground that it was based on hearsay. The witness, Dr. Bullen, who was the plaintiff's family physician, was asked whether he had eliminated certain diseases or conditions which in many cases cause blindness, among them brain tumor, before concluding that the collision with defend-

ant's automobile was the cause of the blindness. He said that he had and that he relied on X-ray pictures which were taken by someone else. He was then asked whether the X-ray was taken as part of an encephalogram. He said he didn't know. He was then asked, "Q. Do you read and interpret encephalograms?" And he answered, "Oh, I look at them but I generally go by the diagnosis made by the man that takes the picture." Defendant's counsel then asked the court to strike out the answer of the witness because "he [the doctor] has taken it from somebody else—some other doctor." The court declined to strike it out and an exception was taken. At the outset it is clear that the ground of appeal as stated, viz., a motion to strike out part of Dr. Bullen's testimony, is quite misleading and in fact inaccurate. No such motion was made. Rather there was a request that the doctor's *answer* that he accepted "the diagnosis made by the man that takes the picture" be struck out. In any event there is no merit in the exception or the ground of appeal based thereon. Suppose the court had struck out the answer—of what possible benefit would that be to the appellant? The answer, displaying as it did, the witness' complete frankness—that he usually depended on some other person's interpretation of an encephalogram—was entirely helpful to the appellant. There was no motion to strike out or limit the scope of the witness' conclusion.

Now it further appears that this case was tried before and that the said encephalogram had at the former trial been introduced in evidence. At this juncture in the present trial, before the court refused to strike the witness' answer, the court inquired of counsel if the encephalogram was again to be offered in evidence and, being assured that it would be—and it subsequently was—he declined to strike out the doctor's answer. We think the trial court was entirely right in his disposition of the motion to strike out the doctor's answer for the reason that the doctor, in his testimony elsewhere, said that he had seen, examined and read the X-ray pictures taken by or under the direction of Dr. Thomas A. Sanfason, a specialist in the treatment of the eye. The weight

to be given to the opinion of Dr. Bullen was of course a matter
of argument by counsel to the jury; but it was quite clear
to court, counsel and jury on the entire testimony of Dr.
Bullen that his opinion was based on his own examination of
the X-ray plates and the diagnosis that followed by the doctor
for whom these X-ray pictures of the plaintiff were taken. In
view of the fact that the answer complained of, and which
the court refused to strike out, clearly referred to the general
practice of this witness, namely, to go by the diagnosis made
"by the man that takes the picture," and that in this case
he had previously and unequivocally stated that he had seen
and read the X-ray plates himself, this ground for reversal
is lacking in substance. And, finally, every element upon
which this witness' conclusions were based was proved in the
case. Thus the action of the trial court was in accord with
our cases, of which *Birtwistle* v. *Public Service Railway Co.,*
94 *N. J. L.* 407, is typical.

*Second*—Under this point appellant says that the trial
court erred in excluding a question addressed to an expert
called for the plaintiff inquiring "whether the outcome of the
case determined whether or not the witness would be paid."
We call attention to the fact which we consider important—
that the witness in question, Dr. Bullen, was not called as an
expert. He had been the plaintiff's family doctor for years
and had treated the plaintiff for three months after the acci-
dent, up to the time plaintiff's sight began to fail. Then an
eye specialist was called in. The incident leading to the point
under consideration arose in this fashion:

The accident happened on February 12th, 1935; the plain-
tiff was taken to a hospital where he remained for three or
four days. The witness was asked on direct examination:
"*Q.* On February 16th, 1935, up to the present time what is
your bill? *A.* $302. * * * *Q.* Is that a fair and reasonable
charge for your services over all these months and years? *A.*
Yes." On cross-examination these questions and answers
appear: "*Q.* Have you been paid that bill, doctor? *A.* No.
* * * *Q.* Does the outcome of this case determine whether
or not you get paid?" An objection to the question was sus-

tained and an exception allowed. The argument is that the witness was an interested party and the question should have been allowed to show interest, relying on the case of *Reed, Adms.,* v. *Firemen's Insurance Co.,* 78 *N. J. L.* 549; but we do not think that the witness was an interested party in the same sense or to the extent that the expert witness was in the Reed Case, wherein the question addressed to the witness, in a suit to recover the value of property damaged by fire, was plainly aimed at his credibility and interest contingent on the outcome. Here the trial court pointed out that Dr. Bullen's bill was a debt comprehending a period of three years in point of time and service, and that it was obviously due even before the plaintiff's case was reached for trial and might be recovered regardless of the outcome of the case. Nonetheless, we think that the court, as a matter of discretion, should have allowed the question and permitted an answer. The action of the court, however, did not, in our view, injuriously affect the substantial rights of the defendant (*R. S.* 2:27-363), and we perceive no harmful error.

*Third*—The final point is that the trial court erred in denying motions for nonsuit and for a direction for the defendant.

The reasons advanced in support of each motion were the same, namely, that there was no proof of negligence in the conduct of the defendant and that the plaintiff was guilty of contributory negligence as a matter of law. The situation in the light of the testimony considered in the aspect most favorable to the plaintiff was this: Is a pedestrian crossing a public street at a crosswalk (where others are likewise crossing), who looked both ways before crossing but did not see the automobile which struck him, although it was stated by a witness for plaintiff that said witness saw the car ten or fifteen feet away, that it was going slowly (between ten and twelve miles an hour) and that the plaintiff took about five steps from the curb after such witness had observed the car, and was then run down—is such pedestrian guilty of contributory negligence as a matter of law for failure to make observation? We think not. This is not like the situation in the

case of *Branigan* v. *Demarest,* 109 *N. J. L.* 123, where the plaintiff stepped in front of a standing bus only to be struck by a car then about to pass the bus; nor like the case of *Trimboli, &c.,* v. *Public Service Co-ordinated Transport,* 111 *Id.* 481, where the decedent stepped from a trolley car and was struck by an oncoming vehicle, the evidence being that the decedent had looked neither to the right nor left as he stepped from the car and proceeded upon the roadway.

The facts in this case are quite different from those in the cases just mentioned. Further, our Traffic act (*R. S.* 39:4-36) provides that the driver of a vehicle "shall yield the right of way to a pedestrian crossing a roadway within any marked crosswalk or within any unmarked sidewalk at the end of the block except at intersections where the movement of traffic is being regulated by police officers or traffic control signals." The provisions of the Traffic act, *supra,* do not of course make the operator of an automobile the insurer of the safety of pedestrians who cross the roadway at a crosswalk; nor do they relieve the pedestrian of the duty of looking out for his own safety as an ordinarily prudent person would do in the circumstances; but in the estimate of what ordinary prudence is in the situation here, there must be some consideration given to the law which ordains that the pedestrian crossing at the crosswalk is entitled to the right of way. And so, in looking at all the facts of the case, we are in accord with the learned trial judge that it was for the jury to say whether the defendant was negligent and likewise whether the plaintiff was guilty of negligence that contributed to the accident.

The judgment will be affirmed, with costs.